**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cherie Macaraeg, et al., | No. CV-23-00990-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| Dignity Health, | |
| Defendant. | |

Before the Court is Plaintiffs' *Daubert* Motion Regarding Testimony of Defendant's Rebuttal Expert Anna Witter-Merithew (Doc 50). The motion is fully briefed. (Docs. 50, 58, 60, 64, 66.) The Court held oral argument on May 27, 2025.

**I.  BACKGROUND**

The factual background of this case was set forth in the Court's previous order granting in part and denying in part Defendant Dignity Health's motion for summary judgment. (Doc. 76.) Relevant here, Marie Rose Lennox Wing was deaf and used American Sign Language ("ASL") to communicate. (*See* Doc. 71 at 24:23-25:2.) She passed away after three visits to Dignity Health hospitals over the course of a month. (*Id.* at 127.) Her estate and family members brought this lawsuit following her death. It argues Dignity Health violated state and federal law by requiring family members interpret for Ms. Wing during her hospital visits. (*See* Doc. 1 ¶¶ 67-68, ¶ 82. ¶ 102, ¶¶ 119-20.)

During discovery, Plaintiffs retained Dr. Judy Shepard-Kegl as an expert. (Doc. 64 at 82.) Dr. Shepard-Kegl provided numerous opinions related to Ms. Wing, her family, and

1  Dignity Health. (*See id.* at 107-11.) But for the purposes of this *Daubert* motion, she opined
2  Ms. Wing lacked sufficient "reading and writing skills to function in a hospital context"
3  (*id.* at 107), her family did not have enough ASL fluency to interpret in a medical setting
4  (*see id.* at 107-08), and Dignity Health improperly coerced family members to act as
5  interpreters by not providing Ms. Wing with interpretive services (*see id.* at 108-09).

6        In response, Dignity Health retained Ms. Ann Witter-Merithew as a rebuttal expert.
7  (*Id.* at 21.) Ms. Witter-Merithew opined Ms. Wing had "some proficiency in reading and
8  writing English" and could understand non-ASL communications occurring in a hospital
9  setting. (*Id.* at 35-36.) She further opined Dignity Health "was prepared to and perhaps
10 offered [interpretive] services," but Ms. Wing declined those services because she
11 preferred to communicate through family members. (*See id.* at 21-22.) Finally, Ms.
12 Witter-Merithew opined on the dynamic between deaf parents, their children, and medical
13 providers. (*See id.* at 37-39.)

14       Plaintiffs' *Daubert* motion challenges the admissibility of Ms. Witter-Merithew's
15 expert opinion under Rule 702 of the Federal Rules of Evidence. (Doc. 50.)

16 **II.    LEGAL STANDARD**

17       A party offering expert testimony must show it satisfies Rule 702 of the Federal
18 Rules of Evidence. Rule 702 provides:

19
20 > A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
21
22 > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
23
24 > (b) the testimony is based on sufficient facts or data;
25 > (c) the testimony is the product of reliable principles and methods; and
26
27 > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

28 Fed. R. Evid. 702. This showing must be made by a preponderance of the evidence. Fed.

R. Evid. 104(a); *see also Lust ex rel. Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

Trial courts act as gatekeepers, ensuring expert testimony is admissible. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 597 (1993). Expert testimony is admissible when it "rests on a reliable foundation and is relevant." *Id.* at 597. The method of determining relevance and reliability is "flexible." *See id.* at 594. But, as explained in *Daubert*, Rule 702 is about the "scientific validity . . . of the principles that underlie a proposed submission." *Id.* at 594-95. This means trial courts must focus on the principles and methods employed by an expert when determining admissibility, not on the conclusions an expert's approach generates. *See id.* at 595.

## III.   DISCUSSION

### A.   Qualifications

Plaintiffs do "not challenge Ms. Witter-Merithew's general qualifications as an expert on [ASL], ASL interpreting, and deaf culture generally." (Doc. 50 at 2.) Rather, they challenge her ability to review and interpret Ms. Wing's medical records. (*Id.* at 4.) Plaintiffs argue nothing in Ms. Witter-Merithew's resume indicates she has "any training or certifications related to the review of medical records." (*Id.* at 6.)

Rule 702 provides "five bases for qualifying an expert: knowledge, skill, experience, training, or education." 29 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Evid.* § 6264.1 (2d ed.) (updated 2025) (internal quotation marks and citation omitted). Once qualified, experts can only testify in areas compatible with their competency. *See id.* at § 6264.2.

Ms. Witter-Merithew spent over fifty years as an ASL translator and instructor. (*See* Doc. 64 at 28-29.) Her career involved working in complex environments, including interpreting for "criminal and civil court cases[,] . . . family and individual counseling[s], in-patient treatment programs, . . . [and] healthcare and rehabilitative treatments." (*See id.* at 29.) Ms. Witter-Merithew has experience interpreting for deaf parents in medical settings. (*See id.* at 40.) She also holds a bachelor of professional studies degree in

linguistics and interpreting, a master's degree in education, and multiple certifications. (*See id.* at 29.)

Some of Ms. Witter-Merithew's opinions rely on medical records. An example includes her rebuttal of Dr. Shepard-Kegl's statement hospital staff refused to provide interpretive services to Ms. Wing. (*See id.* at 87.) To rebut this statement, Ms. Witter-Merithew cites medical records showing Dignity Health offered Ms. Wing interpretive services throughout her hospital visits. (*See id.* at 21-22.) She opines the medical records indicate Dignity Health "was prepared to and perhaps offered [interpretive] services," but Ms. Wing declined those services because she preferred to communicate through family members. (*See id.*)

Plaintiffs concede Ms. Witter-Merithew is qualified to be an expert "on [ASL], ASL interpreting, and deaf culture generally." (*See* Doc. 50 at 2.) The Court agrees. "Rule 702 contemplates a *broad conception* of expert qualification[]" and only requires a "*minimal foundation* of knowledge, skill, and experience." *See Hangarter v. Provident Life & Accident Ins.*, 373 F.3d 998, 1015-16 (9th Cir. 2004) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)); *see also Simington v. Silver Spur MHP LLC*, CV-20-01789-PHX-ESW, 2022 WL 16550396, at *3 (D. Ariz. Oct. 31, 2022) (applying *Hangarter* to the medical field). Ms. Witter-Merithew has adequate qualifications based on her training and skill in ASL interpretation, her education, her experience interpreting for deaf parents in a medical setting, and her experience providing interpretive services in complex environments.

Plaintiffs argue Ms. Witter-Merithew is unqualified to review and interpret Ms. Wing's medical records. (Doc. 64 at 5.) Arguments related "to the strength of [an expert's] credentials . . . go to the weight, not the admissibility, of [their] testimony." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)). Ms. Witter-Merithew does not use the medical records to offer a medical opinion or to opine on something outside of her area of expertise. (*See* Doc. 64 at 21-22.) She instead uses them to determine what interpretive services were

used or offered during Ms. Wing's hospital visits. (*See id.*) This inquiry does not require any specialized medical training or experience. *See Simington*, 2022 WL 16550396, at *3 (finding medical records can provide foundation for non-medical information like billing).

To the extent Ms. Witter-Merithew lacks experience using medical records or normally does not rely on them when determining if interpretive services were offered, those arguments are best left for cross examination. *See id.*; *United States v. Garcia*, 7 F.3d 885, 889-90 (9th Cir. 1993) (finding a lack of specialized knowledge impacts the weight of an expert's testimony, not admissibility). The Court finds Ms. Witter-Merithew is a qualified expert based on her skill, training, education, and experience. She can use Ms. Wing's medical records to the extent they allow her to render an opinion within her area of expertise.

### B. Sufficient Facts or Data

Plaintiffs argue Ms. Witter-Merithew did not rely on sufficient facts or data when forming her opinions. (*See* Doc. 50 at 9.) They explain the opinions largely rely "on a cursory review and interpretation of medical records" and demonstrate a lack of firsthand knowledge about the events leading to this lawsuit. (*See id.* at 4, 9.) To support their argument, Plaintiffs point to portions of Ms. Witter-Merithew's expert report about the use of Video Remote Interpreting ("VRI") services with Ms. Wing. (*See id.* at 12.) Plaintiffs argue the report's reasoning demonstrates Ms. Witter-Merithew lacked "specific knowledge about the VRI system[s] used at [Dignity Health] facilities and [their] effectiveness for Ms. Wing." (*See id.* at 12.)

Rule 702(b) requires expert opinions be "based upon sufficient facts or data." This requirement calls for a quantitative analysis—one that asks "whether an expert 'had sufficient factual grounds on which to draw [their] conclusions.'" *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026 (9th Cir. 2022) (quoting *Damon v. Sun Co.*, 87 F.3d 1467, 1475 (1st Cir. 1996)); Fed. R. Civ. P. 702 advisory committee's notes to the 2000 amendment.

Rule 702(b) focuses on foundation, not corroboration. *See Elosu*, 26 F.4th at 1025. A trial court may conclude there is "too great an analytical gap between the data and the opinion proffered," but "Rule 702 does not license a court to engage in freeform fact finding, to select between competing versions of evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Id.* at 1026 (internal citation omitted). Experts have a "wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *See id.* (quoting *Daubert*, 509 U.S. at 592-93). They also can extrapolate on existing data to generate novel hypotheses about complex issues. *See id.* Given this leniency, a trial court's role under Rule 702(b) "is to determine 'the scientific validity' of an expert's 'principles and methodology,' not to determine whether their hypothesis is correct, or to evaluate whether it is corroborated by other evidence in the record." *See id.* (quoting *Daubert*, 509 U.S. at 594-95).

For rebuttal experts, Rule 702(b) is even more relaxed. A rebuttal expert's aim is to "expose flaws" in the methodologies provided by other experts. *See IceMOS Tech. Corp. v. Omron Corp.*, CV-17-02575-PHX-JAT, 2019 WL 4750129, at *10 n.9 (D. Ariz. Sept. 30, 2019) (quoting *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1141 (9th Cir. 1999). This limited purpose means a rebuttal expert can entirely rely on an opposing expert's report without their opinion being impermissibly speculative. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1069 (C.D. Cal. 2013). Indeed, a rebuttal expert can conduct zero independent analysis and still satisfy Rule 702(b). *See IceMOS Tech. Corp.*, 2019 WL 4750129, at *10 n.9.

Ms. Witter-Merithew relied on over 2,000 pages of medical records, fillings in this case, policy manuals from Dignity Health, and "research and literature from the field of deafness and ASL-English interpreting" to create her opinions. (*See* Doc. 64 at 33-34.) This Court has previously found similar approaches satisfy Rule 702(b)'s quantitative requirements. *See, e.g.*, *IceMOS Tech. Corp.*, 2019 WL 4750129, at *10.

Yet Plaintiffs still argue Ms. Witter-Merithew's opinions are speculative because they largely rely "on a cursory review and interpretation of medical records," lack firsthand

knowledge of the events leading to this lawsuit, and lack specific knowledge on the VRI systems used in Dignity Health hospitals. (*See* Doc. 50 at 4, 9, 12.) There is no requirement that experts have firsthand knowledge about the events leading to a lawsuit. *Daubert*, 509 U.S. at 592-93. Experts also can extrapolate on existing facts, such as medical records and the availability of VRI systems, to generate novel theories. *See Elosu*, 26 F.4th at 1026. All three arguments challenge the factual basis and reasoning of Ms. Witter-Merithew's opinions. Such challenges "go to the weight of evidence" and are solely "within the province of [the] fact finder." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). Plaintiffs can readdress their arguments during cross examination. *See Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1034 (S.D. Cal. 2023). The Court finds Ms. Witter-Merithew's opinions rely on sufficient facts and data.

### C. Reliable Principles and Methods

Plaintiffs argue Ms. Witter-Merithew provides two unreliable opinions. (*See* Doc. 50 at 4-6, 9-10.) The first concerns Ms. Wing's language use and ability to communicate through mediums like ASL and written English. (Doc. 64 at 35-36.) The second concerns family members interpreting for Ms. Wing. (*Id.* at 36-40.)

Rule 702(c) requires expert testimony be "the product of reliable principles and methods." The term "principle" refers to "a theory that can be used to explain the meaning of an observation." Wright & Miller, *supra* § 6268.1. While the term "methods" primarily "refers to *how* the expert collects data and derives theories of opinions from them." *Id.* Expert methodology is generally considered reliable when it uses "the same level of rigor that characterizes practice in the relevant field of expertise." *Id.*

Like other parts of Rule 702, the test for reliability is "flexible." *City of Pomona*, 750 F.3d at 1044. The traditional indicia of reliability, as articulated in *Daubert*, requires considering testability, peer review, known or potential error rates, and general acceptance within the relevant community. *See United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000). These factors are "meant to be helpful, not definitive, and [a] trial court has discretion to decide how to test an expert's reliability, as well as whether the testimony is

reliable, based on the particular circumstances of the particular case." *City of Pomona*, 750 F.3d at 1044 (citation omitted).

This case-specific approach to reliability applies when experts testify "based on their experience rather than based on any systemic methodology." *See United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022). The advisory committee notes to Rule 702 "explicitly recognize[] that the application of extensive experience is a method that can reliably support expert testimony." *Id.* (citation omitted). But testimony based on an expert's experience does not lend itself to the reliability analysis articulated under *Daubert*. *See id.* Unlike *Daubert*'s scientific-based approach to reliability, expert testimony premised on knowledge or experience is inherently subjective and not reviewable through outside sources. The Ninth Circuit Court of Appeals, recognizing this problem, provided unique factors to assess the reliability of experience-based expert testimony in *Holguin*. *Id.* The *Holguin* factors are "whether the expert's experience supports [their] conclusion; whether the expert's reasoning is circular, speculative, or otherwise flawed; or whether the expert's reasoning is adequately explained." *See id.* (internal citations and quotation marks omitted).

### 1. Language Use by Ms. Wing

Several limitations underlie Ms. Witter-Merithew's opinion on language use. Due to Ms. Wing's death, Ms. Witter-Merithew could not conduct a formal language and communication assessment and could not interview Ms. Wing "about the quality and effectiveness of [services] she received" from Dignity Health. (*See* Doc. 64 at 24.) Ms. Witter-Merithew instead had to rely on "the reporting of others" to assess language usage and Ms. Wing's ability communicate. (*See id.*) She concedes this limited information means Ms. Wing's language proficiency can "only be indirectly known or speculated upon." (*See id.* at 24-25.)

Ms. Witter-Merithew disagrees with Dr. Shepard-Kegl's opinion Ms. Wing had "insufficient reading and writing skills to function in a hospital context." (*See id.* at 35-36, 105-06.) To rebut the opinion, Ms. Witter-Merithew cites medical records indicating Ms.

Wing interacted with hospital staff, provided "answers on paper" to questions, and "demonstrated understanding" of instructions through teach-back techniques. (*See id.* at 25, 36.) She further notes Ms. Wing lived in a home with non-deaf grandchildren who considered her "like a second mother." (*See id.* at 35-36.) Living with non-deaf grandchildren, according to Ms. Witter-Merithew, demonstrates Ms. Wing "had substantial experience and adaptability for engaging with hearing individuals." (*Id.* at 36.) Ms. Witter-Merithew opines Ms. Wing had "some" proficiency in speech, "some proficiency in reading and writing English," and was fluent in ASL. (*See id.* at 35.) She further opines Ms. Wing could understand non-ASL communications in a hospital setting. (*See id.* at 36.)

### i. First *Holguin* Factor

As previously discussed, Ms. Witter-Merithew is a qualified expert on ASL and ASL interpreting. This experience allows her to opine on Ms. Wing's language proficiency. *See Sw. Fair Hous. Council v. WG Chandler Villas SH LLC*, 562 F. Supp. 3d 18, 25 (D. Ariz. 2021) (qualifying a knowledge and experience expert based on their "experience working with deaf individual in professional, clinical, research, and personal settings"). The first *Holguin* factor weighs in favor of finding the opinion reliable.

### ii. Second *Holguin* Factor

Ms. Witter-Merithew concedes Ms. Wing's non-verbal proficiency "can only be indirectly known or speculated upon." (Doc. 64 at 24.) The Court agrees. By relying on medical records and family history, Ms. Witter-Merithew attempts to determine language proficiency based on third-party accounts of interactions with Ms. Wing. This reasoning is flawed because Ms. Wing's language proficiency depends on her ability to understand and communicate information. *See, e.g.*, *Me. Hum. Rts. Comm'n v. Sunbury Primary Care, P.A.*, 770 F. Supp. 2d 370, 392 (D. Me. 2011). How others perceive Ms. Wing's proficiency is relevant to the analysis. But it is too speculative to be the basis of Ms. Witter-Merithew's opinion. *See id.* The second *Holguin* factor, "whether the expert's reasoning is circular, *speculative*, or otherwise flawed," therefore weighs against finding the opinion reliable. *See* 51 F.4th at 855 (emphasis added).

### iii. Third *Holguin* Factor

Ms. Witter-Merithew's opinion relies on medical records and family history to determine Ms. Wing's non-verbal language proficiency. (*See* Doc. 64 at 25, 35-36.) This deviates from the customary approach taken in ASL discrimination cases. ASL discrimination experts typically use scientific tests and methods to assess a hearing-impaired individual's ability to communicate. *See, e.g.*, *U.S. EEOC v. Placer ARC*, 147 F. Supp. 3d 1053, 1057-58 (E.D. Cal. 2015) (determining a deaf individual's ability to communicate from multiple tests); *Me. Hum. Rts. Comm'n*, 770 F. Supp. 2d at 392 (explaining expert's multi-step technique for determining a deaf patient's reading level). The experts then apply their test results to the facts of the case. *Me. Hum. Rts. Comm'n*, 770 F. Supp. 2d at 392-93. If reliability is challenged, a trial court will assess the expert's methodology using the *Daubert* factors. *See id*.

The different approach that Ms. Witter-Merithew used is not determinative of reliability. *See City of Pomona*, 750 F.3d at 1044 (stating reliability depends "on the particular circumstances of the particular case"). Ms. Wing's death means the unique circumstances of this case warrant a non-scientific expert. *See Sw. Fair Hous. Council*, 562 F. Supp. 3d at 26 (relying on a knowledge and experience expert where the plaintiff was an entity). Rule 702(c), however, still requires Ms. Witter-Merithew employ "the same level of rigor" with her approach as other assessments used to determine language proficiency. Wright & Miller, *supra* § 6268.1. Language proficiency is not something readily discernable from experience alone. *See Holguin*, 51 F.4th at 858 (explaining some opinions can rely on experience alone while others need to present some explanation of how an expert applied their experiences to the facts of a case). Ms. Witter-Merithew, as a knowledge and experience expert, must provide some methodology explaining how she applied her background to the facts of this case. *See Holguin*, 51 F.4th at 855.

The Court finds Ms. Witter-Merithew did not make such a showing. Her opinion does not identify any knowledge or experience applicable to her analysis of this issue. Instead, her opinion entirely relies on assertions made in medical reports and deposition

testimony. (*See* Doc. 64 at 35-36.) Nothing is inherently wrong with relying on such information when forming an expert opinion. But Rule 702(c) requires a more robust methodology for opinions on language proficiency. *See Holguin*, 51 F.4th at 858. Ms. Witter-Merithew must explain why her knowledge or experience leads her to believe certain facts demonstrate a certain level of proficiency from Ms. Wing. *See id*. Doing so allows Plaintiffs to examine her methodology and address any critiques during cross examination. Ms. Witter-Merithew, by not connecting her knowledge or experience to the opinion, did not adequately explain why she believes Ms. Wing was fluent in ASL and somewhat proficient in other forms of non-verbal communication. The third *Holguin* factor strongly weights against finding the opinion reliable. *See id.* at 855.

### iv.   **Summary of *Holguin* Factors**

The first *Holguin* factor weighs in favor of finding the opinion reliable, while the second and third *Holguin* factors weigh against reliability. On balance, the Court concludes the opinion is not reliable because of the strong interests present in the second and third factors. Ms. Witter-Merithew cannot opine on Ms. Wing's fluency in ASL or her proficiency in other forms of non-verbal communication.[1] (*See* Doc. 64 at 35.)

The section of Ms. Witter-Merithew's report titled "[o]pinion about language use by Marie Rose Lennox Wing" also discusses how family members interpreted for Ms. Wing. (*Id.* at 36-37.) This later discussion ties into Ms. Witter-Merithew's opinion about language brokering, which the Court concludes is the product of reliable principles and methods later in this Order. Because the opinion on language brokering is admissible, and because it relies on some of the discussion contained under the opinion at issue here, the Court will only exclude the opinion that Ms. Wing had "some" proficiency in speech, "some proficiency in reading and writing English," and was fluent in ASL. (*See Id.* at 35.) Any discussion concerning family members interpreting for Ms. Wing remains admissible.

---

[1] Dignity Health argues any flaws in Ms. Witter-Merithew's methodology are equally applicable to Dr. Shepherd-Kegl. (*See* Doc. 58 at 11.) That may be the case. But Dignity Health did not challenge Dr. Shepherd-Kegl's opinion.

- 11 -

### 2. Language Brokering

Ms. Witter-Merithew did not interview Ms. Wing's family members. (*See id.* at 10, 25.) She therefore did not opine on the family member's ASL proficiency or "whether the means of communication family [members] used with" Ms. Wing and hospital staff was effective." (*Id.* at 25.) Ms. Witter-Merithew instead challenges Dr. Shepard-Kegl's opinion that Dignity Health did not provide communication assistance to Ms. Wing. (*See id.* at 87). She also challenges Dr. Shepard-Kegl's opinion Ms. Wing "would have been better served by having a professional medical interpreter." (*See id.* at 108.)

Ms. Witter-Merithew relies on her personal and professional experience to support both challenges. Ms. Witter-Merithew has personal experience interpreting for her deaf parents in medical settings. (*See id.* at 40.) She also has professional experience "being present and working as the professional interpreter in the midst of deaf parents and a young adult offspring interfacing about the information interpreted." (*See id.*) Both inform Ms. Witter-Merithew's belief that deaf parents prefer having their children interpret even when professionals are available. (*See id.*) She notes this belief aligns with the facts of this case, where medical records indicate Ms. Wing likely had a personal preference for her family members interpreting for her. (*See id.* at 25-26, 37.) Ms. Witter-Merithew opines Dr. Shepard Kegl incorrectly concludes Ms. Wing would have been better served by a professional interpreter; a professional would have gone against her wishes. (*See id.* at 26-28, 40.) She further opines that Ms. Wing's preference for communicating through family members also casts doubt on Dr. Shepard Kegl's conclusion that Dignity Health refused interpretive services. (*See id.*) Family members interpreting for Ms. Wing was likely due to her personal preference, rather than a lack of resources from Dignity Health. (*See id.*)

#### i. First *Holguin* Factor

The first *Holguin* factor weighs in favor of finding the opinion reliable because Ms. Witter-Merithew is a qualified expert on deaf culture. (*See* Doc. 64 at 3.) This experience supports her opinions.

### ii. Second *Holguin* Factor

Both opinions provide an alternative explanation to Dr. Shepard Kegl's conclusion that Dignity Health refused interpretive services, forcing family members to interpret for Ms. Wing. Expert opinions offering "a different, purportedly better," explanation of events are "a proper way to rebut the methodology of someone else." *See Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 896 (S.D. Cal. 2019). The Court finds no obvious flaws that would preclude the opinions under Rule 702. The second *Holguin* factor supports finding the opinions reliable. *See* 51 F.4th at 855.

### iii. Third *Holguin* Factor

By connecting her knowledge and experience with the facts of this case, Ms. Witter-Merithew employs a methodology that can be analyzed and critiqued by Plaintiffs during cross examination. *See id.* at 858. Both opinions adequately explain their reasoning for the purposes of Rule 702(c). The third *Holguin* factor supports finding the opinions reliable. *See id.* at 855.

### iv. Summary of *Holguin* Factors

With all three factors supporting reliability, the Court concludes Ms. Witter-Merithew's opinions are reliable. Ms. Witter-Merithew can opine on language brokering and Ms. Wing's preference for communicating through family members.

### D. Relevance

Plaintiffs argue that Ms. Witter-Merithew's "[o]pinion about the shortage of sign language interpreters." is irrelevant.[2] (Doc. 64 at 7, 41-45.)

Rule 702(a) requires expert witnesses have "specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." The "will help" requirement goes primarily to relevance. *See Primiano v. Cook*, 598 F.3d 558, 567 (9th Cir. 2010). Relevancy is a low bar. *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014). Expert testimony "is relevant if the knowledge underlying it has a

---

[2] Plaintiffs also argue Ms. Witter-Merithew's opinion on language brokering is irrelevant. (Doc. 50 at 6.) As previously discussed, Ms. Witter-Merithew's opinion relates her conclusion Ms. Wing wanted family members to interpret on her behalf. (*See* Doc. 64 at 26-28, 40.) The opinion is relevant.

valid connection to the pertinent inquiry." *Primiano*, 598 F.3d at 565.

Ms. Witter-Merithew opines there is a general shortage of ASL interpreters in the United States. (*See* Doc. 64 at 41-45.) But she does not explain how this applies to the facts of this case. Indeed, Ms. Witter-Merithew testified at her deposition that the interpreter shortage did not relate to Dignity Health or its treatment of Ms. Wing. (*See id.* at 70.)

Dignity Health argues the opinion is relevant because Dr. Shepard-Kegl "has opined that it would have been reasonable to have an independent interpreter available consistently throughout" Ms. Wing's hospital visits. (Doc. 58 at 16.) Dignity Health cites Dr. Shepard-Kegl's deposition testimony to support its argument. (*Id.*) The deposition transcript, however, was not provided as an exhibit in Dignity Health's response to Plaintiffs' *Daubert* motion. The deposition testimony also is not contained in any other briefing related to the *Daubert* motion. Thus, there is no support in the record for Dignity Health's argument. *See Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 504 (9th Cir. 1994) (stating no party should presume that the Court will scour the record for facts or theories that might support either party's case). Dr. Shepard-Kegl's report concludes it was inappropriate for Dignity Health to have family members interpret for Ms. Wing. (*See* Doc. 64 at 104-05.) But it does not go so far as to say interpreters needed to be constantly available. (*See id.*) Relevance requires that expert testimony have underlying knowledge with "a valid connection to the pertinent inquiry." *Primiano*, 598 F.3d at 565. The Court finds this opinion is not relevant and therefore inadmissible.

E.   **Prejudice**

Plaintiffs argue "Ms. Witter-Merithew's testimony and opinions about the use of family members for interpreting poses a significant risk of confusion and misleading jurors." (Doc. 50 at 13.) The Court disagrees. Rule 403 of the Federal Rules of Evidence states "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury."[3] As

---

[3] Although Plaintiffs do not cite Rule 403 in their *Daubert* motion, the Court construes their argument challenging Ms. Witter-Merithew's opinions as posing "a significant risk of confusion and misleading the jury" to be a Rule 403 challenge. (*See* Doc. 50 at 13.)

previously discussed, Ms. Witter-Merithew provides a valid rebuttal opinion that offers an alternative explanation to Dr. Shepard-Kegl's conclusion Dignity Health refused to provide interpretive services, forcing family members to interpret for Ms. Wing. *See Baker*, 423 F. Supp. 3d at 896. There is no risk of confusion and jurors will not be misled.

### IV.    CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE ORDERED** granting in part and denying in part Plaintiffs' *Daubert* Motion Regarding Testimony of Defendant's Rebuttal Expert Anna Witter-Merithew (Doc. 50). Ms. Witter-Merithew's opinion about Ms. Wing's language use is inadmissible to the extent it concludes Ms. Wing had "some" proficiency in speech, "some proficiency in reading and writing English," and was fluent in ASL. Ms. Witter-Merithew's "[o]pinion about the shortage of sign language interpreters" is also inadmissible. The *Daubert* Motion is denied in all other respects.

Dated this 3rd day of June, 2025.

Michael T. Liburdi
United States District Judge