**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cherie Macaraeg, et al., | No. CV-23-00990-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| Dignity Health, | |
| Defendant. | |

Before the Court are Plaintiffs' Motion for Reconsideration of Order on Defendant's Motion for Summary Judgment (Doc. 79) and Plaintiffs' Motion for Leave to File a Reply to Defendant's Response to Motion for Reconsideration (Doc. 83). Both motions concern Plaintiffs' request for the Court to reconsider its prior order granting in part and denying in part Defendant Dignity Health's motion for summary judgment (Doc. 76). The Court will deny both.

**I.**

Plaintiffs move for leave to file a reply brief supporting their motion for reconsideration. The Court previously ordered "[n]o reply will be permitted without separate order from the Court." (Doc. 80.) The Court has not asked for a reply brief. Nor does it find a reply brief necessary to decide the motion for reconsideration. Therefore, the Court will deny Plaintiffs' motion for leave to file a reply brief. (Doc. 83).

. . . .

. . . .

**II.**

The standard of review for motions for reconsideration is Local Rule of Civil Procedure 7.2(g). Motions for reconsideration will ordinarily be denied "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv. 7.2(g)(1). "Motions for reconsideration are disfavored . . . and are not the place for parties to make new arguments not raised in their original briefs. Nor is reconsideration to be used to ask the Court to rethink what it has already thought." *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 582 (D. Ariz. 2003) (citations omitted).

Plaintiffs provide five reasons the Court should reconsider its prior summary judgment order: (1) the Court misapplied *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022); (2) the Court misapplied the standing doctrine; (3) the Court did not address relevant federal regulations; (4) the Court improperly required a quantification of damages; and (5) the Court "overlooked the Arizonans with Disabilities Act's independent statutory authorization for compensatory damages." (Doc. 79 at 2.)

**A.**   ***Cummings v. Premier Rehab Keller, P.L.L.C.***

The Court's prior order held *Cummings* precludes recovery of emotional distress damages under the Rehabilitation Act and Affordable Care Act. (Doc. 76 at 13.) Plaintiffs argue this holding was erroneous. (Doc. 79 at 3-4.) Alternatively, they assert the Court must reconsider its reading of *Cummings* because the United States Supreme Court's recent decision in *A.J.T. v. Osseo Area Schools*, 605 U.S. 335 (2025), acts as an intervening change of law. (*Id.* at 5.)

**1.**   **Scope of *Cummings***

Plaintiffs argue the Court committed manifest error by applying *Cummings* beyond Title VI remedies. (*Id.* at 3-4.) The Court already considered this question when deciding its prior order. (Doc. 76 at 13.) It will not consider it again here. *Motorola, Inc.*, 215 F.R.D. at 582 (stating parties cannot use motions for reconsideration to revive previously considered arguments).

### 2. *A.J.T. v. Osseo Area Schools*

About two weeks after the Court ruled on Dignity Health's motion for summary judgment, the United States Supreme Court issued its decision in *A.J.T.* There, the Court considered whether different standards could apply to different types of ADA and Rehabilitation Act claims. 605 U.S. at 344. This question concerned precedent in the Eighth Circuit Court of Appeals requiring education-based claims to satisfy a "heightened showing of 'bad faith or gross misjudgment'" when non-education claims only had to show deliberate indifference. 605 U.S. at 344-45. The Court in *A.J.T.* held "ADA and Rehabilitation Act claims based on educational services should be subject to the same standards that apply in other disability discrimination contexts." *Id.* at 345. It explained "there is no textual indication that the protections of either . . . statute apply with lesser force to *certain* qualified individuals bringing *certain* kinds of claims." *Id.*

*A.J.T.* did not address *Cummings*. Nor do Plaintiffs base their claims on educational services. Yet despite these obvious differences, Plaintiffs still argue *A.J.T.* represents an intervening change of law because it observes courts "do no[t] decide issues . . . outside of the question presented" and remedies under the Rehabilitation Act are "expansive and unqualified." (Doc. 79 at 5.) The observation about courts not deciding issues "outside of the question presented" refers to parties raising new arguments on appeal. 605 U.S. at 350. And the reference to remedies being "expansive and unqualified" refers to Rehabilitation Act claimants, regardless of the type of claim being brought, having an equal opportunity to pursue relief. *Id.* at 345. These propositions neither cast doubt on *Cummings* nor undermine the Court's conclusion.

### B. Standing for Ms. Wing's Family Members

The Court's prior order held the family members of Plaintiff Marie Rose Lennox Wing lacked standing to pursue relief under Section 504 of the Rehabilitation Act. (Doc. 76 at 6.) Plaintiffs argue this holding was erroneous because (1) "forced interpretation constitutes [a] diversion of resources—a classic Article III injury"; (2) the family members' injuries are independent of Ms. Wing; and (3) the family members have standing under 28

C.F.R. § 36.303(c)(2) and 28 C.F.R. § 35.160(c)(2)(ii). (Doc. 79 at 6-8.)

Both disabled and non-disabled individuals can pursue relief under Section 504. *See Barker v. Riverside Cnty. Off. of Educ.*, 584 F.3d 821, 826 (9th Cir. 2009). For non-disabled individuals, Section 504 confers associational standing for discrimination that occurs because of their relationship with a disabled person. *See id.* at 825. Such discrimination, however, must be "specific, direct, and separate" from the discrimination experienced by a disabled person. *George v. AZ Eagle TT Corp.*, 961 F. Supp. 2d 971, 974 (D. Ariz. 2013); *Bax v. Dr. Med. Ctr. Of Modesto, Inc.*, 52 F.4th 858, 867 n.4 (9th Cir. 2022) ("Claims under Section are governed by the same standard of liability as ADA claims."). Discrimination that is entirely derivative or ancillary is not enough. *Glass v. Hillsboro School District 1J*, 142 F. Supp. 2d 1286, 1289-90 (D. Or. 2001).

### 1. Diversion of Resources

Plaintiffs cite *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), to support finding Ms. Wing's family members have associational standing. There, the United States Supreme Court held "a diversion-of-resources injury is sufficient to establish organizational standing for the purposes of Article III." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 765 (9th Cir. 2018) (quoting *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1042 (9th Cir. 2015) (citation modified). Plaintiffs did not present this argument during summary judgment briefing. Their motion for reconsideration also does not explain how organizational standing allows Ms. Wing's family members—who are individuals—to pursue relief under Section 504. Indeed, the motion completely ignores this aspect of *Havens Realty Corp.*

### 2. Independent, Non-Derivative Injuries

Plaintiffs argue associational standing is shown through family members having to interpret for Ms. Wing in the hospital. (*See* Doc. 79 at 7.) They explain interpreting caused a separate and distinct injury because family members could not remain in their supportive family roles, were forced to perform tasks they were unqualified for, faced a conflict of interest and liability risks, and were treated differently than the family members of

non-deaf patients. (*See id.*)

The Court principally relied on *George* and *Glass* to conclude Ms. Wing's family members lacked standing to pursue relief under Section 504. (Doc. 76 at 6.) *George* held associational standing requires a non-disabled individual have a "specific, direct, and separate" injury, which is shown through them having an individual right to a defendant's services. 961 F. Supp. 2d at 975. *Glass* further explained that, within the context of medical services, an individual right arises when a non-disabled person is separately entitled to the medical care at issue. 142 F. Supp. 2d at 1292.

The family members did not seek treatment from Dignity Health and were only there because of Ms. Wing. This means they were not separately entitled to Dignity Health's interpretive services. *See id.* Without a separate entitlement, the family members did not have a "specific, direct, and separate injury" and lacked associational standing. *See George*, 961 F. Supp. 2d at 974. Any discrimination they experienced was entirely derivative or ancillary to the discrimination experienced by Ms. Wing. *See id.*

Plaintiffs argue generalized theories of harm are enough to confer associational standing. (Doc. 79 at 7.) The Court's prior order already explained one of these theories—family members remaining in a supportive family role—was insufficient because Plaintiffs did not show it created a separate entitlement or individual right to Dignity Health's services. (Doc. 76 at 5.) Plaintiffs' motion for reconsideration still cites no legal authority. (Doc. 79 at 7.) It also does not explain how its theories contradict the Court's reasoning under *Glass* and *George*. *See Waesche v. Embry-Riddle Aeronautical Univ.*, No. CV-21-08020-PCT-DLR, 2023 WL 6847138, at *1 (D. Ariz. Oct. 17, 2023) (explaining a motion for reconsideration requires more than a party stating manifest error).

### 3.     Federal Regulations

Plaintiffs cite 28 C.F.R. § 36.303(c)(2) and 28 C.F.R. § 35.160(c)(2)(ii) to support their argument that Ms. Wing's family members have associational standing. (Doc. 79 at 8.) Both regulations state a hospital "shall not require an individual with a disability to bring another individual to interpret for him or her," unless "the accompanying adult

agrees" and reliance is "appropriate under the circumstances." This standard is relevant in determining whether a hospital provided effective communication under the Rehabilitation Act. *See Bustos v. Dignity Health*, No. CV-17-02882-PHX-DGC, 2019 WL 3532158, at *2 (D. Ariz. Aug. 2, 2019). But it does not create an independent basis for standing. Ms. Wing's family members still must have a "personal stake" in Dignity Health's supposed failure to communicate with Ms. Wing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The Court's previous analysis explains why they lack such a stake.

Therefore, the Court did not err in holding Ms. Wing's family members lacked standing to pursue claims under Section 504.

### C. Liability Under Section 504 and Affordable Care Act

The Court's prior order held this case could proceed to trial because there was a genuine dispute of material fact as to the Section 504 and Affordable Care Act claims brought by Ms. Wing's estate. (Doc. 76 at 9.) Plaintiffs argue this holding was erroneous because 28 C.F.R. § 36.303(c)(2) and 28 C.F.R. 35.160(c)(2)(ii) are dispositive of liability. (Doc. 79 at 7-8.) Why Plaintiffs would seek reconsideration of a ruling in their favor remains unclear. Regardless, Plaintiffs never filed a motion for summary judgment, and their failure to do so waived any arguments related to liability being dispositive. *Motorola, Inc.*, 215 F.R.D. at 582 ("Motions for reconsideration . . . are not the place for parties to make new arguments not raised in their original briefs.").

Therefore, the Court did not err in allowing the Section 504 and Affordable Care Act claims brought by Ms. Wing's estate to proceed to trial.

### D. Damages Quantification

The Court's prior order granted summary judgment on the issue of expectation damages because Ms. Wing's estate did not present evidence indicating its damages could be established with reasonable certainty. (Doc. 76 at 15.) Plaintiffs argue this conclusion was erroneous because summary judgment does not require a damages quantification. (Doc. 79 at 9.)

. . . .

      As the party with the burden of proof at trial, Ms. Wing's estate needed to make a sufficient showing of every element of its Section 504 claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Part of this burden included providing evidence showing the estate's entitlement to monetary damages. *See Bax*, 52 F.4th at 866. The Ninth Circuit Court of Appeals has not explained the showing needed to demonstrate an entitlement to expectation damages post-*Cummings*. But other courts addressing the issue have held a plaintiff must demonstrate their expectation damages are capable of being calculated with reasonable certainty. *See Luke v. Lee Cnty.*, 1:20-CV-388-RP, 2023 WL 6141594, at *2 (W.D. Tex. Sept. 20, 2023). And when a plaintiff "has not offered sufficient evidence such that a factfinder could determine [] expectation damages with reasonable certainty," their request cannot proceed to trial. *Fantasia v. Montefiore New Rochelle*, 19 CV 11054 (VB), 2022 WL 20540940, at *3 (S.D.N.Y. June 16, 2022).

      The Court's prior order follows this reasoning. It held the estate's naked assertion it could recover expectation damages based on the costs Dignity Health "saved by conscripting Plaintiffs to interpret" and "hospital bills because Plaintiffs did not receive the full value of services in the way a hearing patient would" was not enough to show their damages could be calculated with reasonable certainty at trial. (Doc. 76 at 14-15.) The order did not require the estate to quantify its damages, as Plaintiffs suggest. Rather, it required the estate to point to some evidence supporting its entitlement to expectation damages. *See Bax*, 52 F.4th at 866.

      Therefore, the Court did not err in granting summary judgment on the issue of expectation damages.

      **E.**    **Arizonans with Disabilities Act**

      The Court's prior order held Plaintiffs lacked standing to pursue relief under the Arizonans with Disabilities Act. (Doc. 76 at 4 n.3, 5.) Plaintiffs argue the Court erred by not considering the Act during its damages analysis. (*See* Doc. 79 at 9-10.)

      The Court did not need to consider the Arizonans with Disabilities Act because it found Plaintiffs lacked standing to pursue this claim. *See TransUnion LLC*, 594 U.S. at

423. To the extent Plaintiffs argue the Court's holding on standing was erroneous, the Arizonans with Disabilities Act "mirror[s] Title III of the ADA." *See Tauscher v. Phx. Bd. of Realtors, Inc.*, 931 F.3d 959, 962 n.3 (9th Cir. 2019). And the Arizona Legislature intended for the act to be consistent with its federal counterpart. *See Strojnik v. Hyatt Hotels Corp.*, No, CV-21-00741-PHX-DWL, 2022 WL 504480, at *9 (D. Ariz. Feb. 18, 2022). The Court found Ms. Wing's family members lacked standing under Title III because they did not have a separate and distinct injury. (Doc. 76 at 5.) It further found Ms. Wing's estate lacked standing because its claims were moot. (*Id.*) A consistent application requires similar findings under the Arizonans with Disabilities Act.

Therefore, the Court did not err in finding Plaintiffs lacked standing to pursue relief under the Arizonans with Disabilities Act. With there being no basis for reconsideration, the Court will deny Plaintiffs' motion (Doc. 79).

### III.

Plaintiffs alternatively ask the Court to "certify these issues for interlocutory appeal under 28 U.S.C. § 1292(b)." (Doc. 79 at 11.)

A district court can certify an interlocutory appeal when (1) there is a controlling question of law; (2) there is substantial grounds for difference of opinion; and (3) "an immediate appeal may materially advance the ultimate termination of the litigation." *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981). Interlocutory appeals are "applied sparingly and only in exceptional circumstances." *United States v. Woodbury*, 263 F.2d 784, 788 n.11 (9th Cir. 1959). The decision to certify an "interlocutory appeal is committed to the sound discretion of the district court," and "district court judges have unfettered discretion to deny certification." *Salazar v. Driver Provider, Phx. LLC*, No. CV-19-05760-PHX-SMB, 2023 WL 2308372, at *2 (D. Ariz. Mar. 1, 2023) (citations modified).

. . . .

. . . .

. . . .

1	The Court finds there are no exceptional circumstances warranting an interlocutory
2	appeal. It further finds this case is set for trial, and certifying an interlocutory appeal would
3	not advance the termination of this litigation.
4	**IT IS THEREFORE ORDERED** denying Plaintiffs' Motion for Reconsideration
5	of Order on Defendant's Motion for Summary Judgment (Doc. 79).
6	**IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Leave to File a Reply
7	to Defendant's Response to Motion for Reconsideration (Doc. 83).
8	Dated this 20th day of August, 2025.

Michael T. Liburdi
United States District Judge